

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00041-CR

ALFREDO VEJAR GARCIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 69th District Court
Dallam County, Texas
Trial Court No. 5010, Honorable Kimberly Allen, Presiding

November 10, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Alfredo Vejar Garcia appeals from his conviction for the possession or promotion of child pornography. Through two issues, he contends the seizure of his cell phone violated the Fourth Amendment, and his ensuing consent to search that phone was coerced. We affirm.

### Background

Police received a cyber tip concerning appellant's cell phone. That tip involved the presence of child pornography on the device. The tip was later given to Sergeant Trevino.

She went to appellant's home with another officer and spoke with him. After that conversation, officers took possession of appellant's phone. He accompanied the officers to the police station and spoke with them in an interview room. Appellant was not placed in handcuffs and was told he was free to leave if he desired. Nor was the door to the interview room fully closed or locked. Though appellant spoke little English, an officer who could speak Spanish was present and translated.

Trevino did not have a warrant to search the phone when she initially spoke to appellant and told him one was unnecessary, given the nature of the tip. Because cell phones are mobile and evidence thereon could be easily deleted, the officer believed exigent circumstances justified her seizure of it. In response to appellant's repeated requests for his phone, Trevino told him he could retrieve it more quickly if he consented to a search of the phone. Despite initially denying consent, appellant ultimately acceded and permitted Trevino to review items on and download videos from the phone. That resulted in the discovery of child pornography stored on the device.

### Analysis

Prior to trial, appellant moved to suppress the evidence obtained from the phone. The trial court held an evidentiary hearing on his motion and ultimately denied it. That denial forms the basis of this appeal.

### Seizure

Through his first issue, appellant contends the seizure of the phone violated the Fourth Amendment to the United States Constitution. This was so because it occurred without a warrant or facts authorizing seizure without a warrant. We overrule the issue.

The pertinent standard of review is well-settled and need not be reiterated. Instead, we direct the parties to *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) for its explanation.

Next, a warrantless search or seizure is per se unreasonable under the Fourth Amendment unless it falls within a recognized exception to the warrant requirement. *Igboji v. State*, 666 S.W.3d 607, 613 (Tex. Crim. App. 2023). The exception applicable here is the existence of exigent circumstances. The latter applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Id.* The exception allows law enforcement officers to handle emergencies such as situations presenting a "compelling need for official action and no time to secure a warrant." *Id.* Included in those circumstances is the need to act "to prevent the imminent destruction of evidence." *Id.* And, whether law enforcement faced an emergency that justified acting without a warrant calls for a case-by-case determination based on the totality of circumstances existing at the time of the search or seizure. *Id.*

To justify such a seizure, the State must satisfy a two-step process. *Id.* First, there must be probable cause. *Id.* Probable cause exists "when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality . . . or evidence of a crime will be found." *Id.* Second, an exigency requiring immediate action by law enforcement must exist. *Id.* at 613-14. Our Court of Criminal Appeals identified three categories of exigent circumstances. The one invoked entails effort to prevent the destruction of evidence or contraband. *Id.* at 614 (noting this to be an acceptable exigent circumstance). In other

3

words, when law enforcement has probable cause to believe that an item holds contraband or evidence of a crime, but has not secured a warrant, they may seize the item, pending the issuance of the warrant to examine the contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.

Here, the trial court concluded that 1) "Sgt. Trevino had probable cause to seize the phone in that she reasonably believed evidence of a crime would be found on the phone" and 2) "Trevino reasonably believed an exigency existed requiring the immediate seizure of the phone, in that Defendant knew . . . Trevino believed he had videos containing child pornography on his phone and he could have deleted those videos had he retained possession of the phone." In support of those conclusions, we find evidence showing that Trevino received a cyber tip about child pornography. The tip was originally sent to a different department, resulting in a delay in police response. Once Trevino ultimately received the tip, though, she confirmed that the images appeared to contain child pornography, went to appellant's residence, and spoke with his wife. Though appellant was not present, the officer attempted to phone him to find out when he would return. Appellant returned the call, and the number from which he called happened to be that mentioned in the cyber tip. So too did the officer return to the home later that day with an officer capable of translating conversations with appellant. Once there, the translator informed appellant of the reason they wanted to speak to him and alluded to suspicious activity on his phone. Trevino asked for appellant's cell phone and told him no warrant was needed when he inquired about same.

4

A comparable situation occurred in *Reynolds v. State*, No. 06-24-00034-CR, 2024 Tex. App. LEXIS 7229 (Tex. App.—Texarkana Oct. 9, 2024, no pet.) (mem. op., not designated for publication). There, the court found the trial court properly denied the defendant's motion to suppress because it was reasonable to conclude that once the defendant knew he was being investigated for possession of child pornography, he would delete the files if the device was left in his possession. *Id.* at *10. Likewise, in *Rafiq v. State*, 661 S.W.3d 827, 838 (Tex. App.—Beaumont 2022, pet. ref'd), a deputy testified he needed to seize the defendant's cell phone during the interview because "it doesn't take long to reset a phone and erase everything on it or to get rid of it, throw it out the window, smash it, whatever you need to do to destroy what's stored on that phone." Trevino testified to similar concerns. Moreover, one can reasonably infer that appellant knew the officers were interested in his phone and its content given that they mentioned to him "suspicious activity on" his phone. The totality of these circumstances formed a basis from which to reasonably infer the existence of exigent circumstances permitting seizure of the phone without a warrant. And, we cannot fault the trial court for so inferring.

### Search

Through his second issue, appellant argues his consent to police to search his cell phone was the product of coercion and, thus, not valid. We overrule the issue.

Again, a search conducted without a warrant based on probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). One of those exceptions is a search conducted with the person's voluntary consent. *Id.* The validity of such consent is a question of fact to be determined also from the totality of the

5

circumstances. *Id.* Moreover, consent may be communicated in many ways, both directly and indirectly. *Id.*

But, consent cannot be coerced by threat or force, whether same is direct or not. *Id.* at 459. And, its voluntariness is also a question of fact determined by analyzing the totality of the circumstances. As explained by others, "the standard for measuring the scope of consent under the Fourth Amendment is that of 'objective' reasonableness— what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Valtierra v. State*, 310 S.W.3d 442, 449 (Tex. Crim. App. 2010). That is answered by viewing the totality of the circumstances from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen. *Meekins*, 340 S.W.3d at 459. The ultimate question is whether the person's "'will ha[s] been overborne and his capacity for self-determination critically impaired'" such that his consent to search must have been involuntary. *Id.* Finally, because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *Id.* at 460. The finding of voluntariness at bar is not, for it has sufficient evidentiary support.

The record at bar discloses that appellant spoke little English and required a translator to speak with the police. The consent at issue was given during an interview at the police station. The police had invited him to journey to that location to avoid broaching the touchy subject of child pornography in front of his family. He acceded to the request. Though placed in an interview room with two officers, the door to that room was neither fully closed nor locked. Appellant was also told, by the officer in the room

6

who spoke Spanish, that he (appellant) was free to leave. Nor was appellant handcuffed. Thereafter, discourse ensued.

Among other things, that discourse consisted of his being asked several times for leave to search the phone. Appellant initially denied those requests but relented when told that a warrant would be obtained if no consent was granted. Those denials indicated he understood what was being asked of him. So too did they indicate that he understood he need not consent. Indeed, the officer who provided the translating services testified that appellant so understood because appellant would reply in English. Hearing in Spanish and answering in English had import. It meant he would hear the Spanish version of what was being asked, mentally interpret it, and then form the appropriate response in English. Simply put, one could reasonably infer he understood the transpiring discourse. The officer also described appellant as calm.

Other evidence consisted of an officer testifying that he told appellant "if he didn't consent . . . that [Trevino] was going to get a warrant and it was going to take longer for him to get the phone back." Appellant, in turn, "was telling her [Trevino] to just check the phone, and he wanted the phone back." One could reasonably interpret this as appellant inviting the officer to search the phone's content so long as he could timely retrieve the device. No threats were imparted during the interview. Ultimately, after the nature of the consent form was explained to him, appellant executed the form permitting the phone's search.

The totality of the foregoing provided reasonable factual basis from which the trial court could reasonably infer that appellant both consented to the search of his phone and

did so voluntarily.   We must defer to that finding given the record before us.

Having overruled appellant's issues, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice


Do not publish.